[Cite as *State v. Phillips*, 2011-Ohio-6569.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2010 CA 00338 |
| JEFFREY SCOTT PHILLIPS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  2010 CR 0772

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      December 19, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       KRISTINE W. BEARD
PROSECUTING ATTORNEY                  4450 Belden Village Street, NW
KATHLEEN O. TATARSKY                  Suite 703
ASSISTANT PROSECUTOR                  Canton, Ohio  44718
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1} Appellant Jeffrey Scott Phillips appeals his conviction and sentence, in the Court of Common Pleas, Stark County, for the aggravated murder of James Leeson, and for several related felony offenses. The relevant facts leading to this appeal are as follows.

{¶2} On March 11, 2010, James Leeson, a sixty-six-year-old retired firefighter, was found beaten and stabbed to death in the basement of his house on East College Street in Alliance, Ohio. A Stark County Sheriff's Deputy, Michael Leary, assisted by one of Leeson's neighbors, discovered the body as part of the deputy's follow-up of the discovery of Leeson's automobile, a 2001 Chrysler Sebring convertible. The car had been discovered engulfed in flames that morning in nearby Lexington Township. The Alliance Police Department was thereupon contacted to investigate the scene.

{¶3} Alliance detectives discovered, among other things, that the entertainment center areas in the master bedroom and living room were missing their respective flat-screen television sets. A ceremonial sword with blood stains was in the basement. The bedroom was also found ransacked. The detectives also noticed extensive areas of spilled ammonia and bleach at the scene, including amounts on and around Leeson's body. There were no signs of forced entry on the outside doors. However, some of the neighbors reported they had heard a loud banging around 11:00 or 11:30 PM on March 10, sounding like a storm door being caught in the wind. One neighbor, Jennifer Hall, saw Leeson's car coming out of his driveway, traveling fast. She could not see the driver.

{¶4} On the morning of March 11, 2010, at about 6:00 AM, appellant made a cell phone call to Waylon Hillman, a local drug dealer, asking him to look at two television sets appellant wanted to exchange for some crack cocaine. A meeting was arranged at a parking lot in Alliance. Appellant arrived alone, driving a "nice car," a convertible. Tr. at 262. Hillman came to the parking lot with his girlfriend, Kristen Carli. The three went to Hillman's grandmother's home to plug in and check the operability of the TVs. Appellant thereupon exchanged the TVs with Hillman for about $200.00 worth of crack cocaine.

{¶5} Carli then got in her car and followed appellant, who drove Leeson's car. She later watched as he set the interior of Leeson's convertible on fire.

{¶6} At Hillman's request, Carli thereafter took the TVs to an Alliance pawn shop in order to get some cash. The pawn shop accepted one of the sets, but rejected the other because the color picture was unsatisfactory. Hillman thereafter sold the second TV to a third party. Police detectives later traced the TVs to those taken from Leeson's home.

{¶7} Police investigation also revealed that a cell phone registered to appellant was used to make calls to Waylon Hillman on March 10, 2010 at 10:52 PM and 11:52 PM. Cell tower analysis indicated that said cell phone was within 2.8 miles of Leeson's house at those times. Another call was made on appellant's cell phone at 6:52 AM on March 11, 2010.

{¶8} The detectives also interviewed Tammie Goodwin, Leeson's friend and occasional paramour. Goodwin is married to Keith Smith. She was also living with

appellant at the time of Leeson's killing. Goodwin told police she had tried to contact Leeson on March 11, 2010, but got no answer on his phone.

{¶9} The Stark County Coroner conducted an autopsy of Leeson's body. It indicated multiple signs of blunt force trauma to Leeson's neck, face and forehead. There were also six stab wounds, four of which were in Leeson's chest, and chemical burns stemming from liquid bleach that had been poured on the body. The coroner listed the cause of death as a homicide caused by blunt head trauma and multiple stab wounds.

{¶10} Following additional police investigation, as further discussed infra, the Stark County Grand Jury indicted appellant on June 3, 2010 for the aggravated murder of James Leeson, R.C. 2903.01(B), with two death penalty specifications pursuant to R.C. 2929.04(A)(7). Appellant was further charged with aggravated robbery, R.C. 2911.01(A)(3); aggravated burglary, R.C. 2911.11(A)(1); tampering with evidence, R.C. 2921.12(A)(1); and arson, R.C. 2909.03(A)(1). See Indictment, June 3, 2010.

{¶11} Appellant pled not guilty to the charges and the matter proceeded to a jury trial in the Stark County Court of Common Pleas. The guilt phase of the trial began on October 19, 2010. After the state rested, appellant made a motion for acquittal, which was overruled. Appellant then rested without presenting any evidence.

{¶12} The jury returned a verdict of guilty to all charges in the indictment.

{¶13} A separate penalty phase trial was conducted on November 3, 2010. The jury ultimately found that the mitigating circumstances outweighed the aggravating circumstances and accordingly spared appellant the death penalty.

{¶14} On November 15, 2010, the trial court sentenced appellant to life imprisonment without the possibility of parole for the aggravated murder of Leeson, a ten-year prison term for aggravated robbery, and a ten-year prison term for aggravated burglary. The trial court further sentenced appellant to a five-year prison term for tampering with evidence and an eighteen-month prison term for arson. In all, appellant was sentenced to a prison term of life without the possibility of parole and an additional twenty-five years, and was ordered to pay the costs of prosecution.

{¶15} On December 10, 2010, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

{¶16} "I. APPELLANT'S COUNSEL WERE INEFFECTIVE IN FAILING TO OBJECT TO THE INTRODUCTION OF HEARSAY IN THE FORM OF AN FBI GENERATED CELL TOWER ANALYSIS AND REPORT WHICH WAS RECEIVED BY THE INVESTIGATING AGENCY AND USED BY THE INVESTIGATING AGENCY AS A FOUNDATION FOR PREJUDICIAL CHARTS AND TESTIMONY AND WHICH WAS ALSO INTRODUCED AT TRIAL TO SHOW THE VICININTY (SIC) OF CELL PHONE SIGNALS TO LOCAL CELL PHONE TOWERS.

{¶17} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE INTRODUCTION OF A LETTER TO AN UNRELATED THIRD PARTY WHICH INCLUDED OTHERWISE INADMISSIBLE OTHER ACTS EVIDENCE.

{¶18} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE GRUESOME PHOTOS OF THE CRIME SCENE AND AUTOPSY WHICH WERE INFLAMMATORY AND HIGHLY PREJUDICIAL.

**{¶19}** IV. THE JURY'S VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

**{¶20}** V. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT APPELLANT'S MOTION TO VACATE FINES AND COSTS.

I.

**{¶21}** In his First Assignment of Error, appellant contends his trial attorneys were ineffective for failing to object to police testimony at trial concerning an FBI analysis of certain cell phone and cell tower usage at the time of Leeson's murder, where no FBI agents or representatives testified. We disagree.

**{¶22}** Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

**{¶23}** It is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Rogers* (April 14, 1999), Summit App.No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted). Moreover, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

**{¶24}** In essence, appellant in the case sub judice maintains that his trial counsel should have objected to the detectives' reliance on FBI cell tower analyses on the basis that said testimony violated his constitutional right to confront witnesses. Alliance Detective Don Wensel testified that he provided crime scene area information to the FBI, who then assimilated the information and created tower locations maps, which became State's Exhibit 42. Wensel utilized Exhibit 42 in his testimony, proceeding to testify about the time frame of the calls from appellant's cell phone and the manner in which the signals were received and relayed by local towers. Se Tr. at 81-100.

**{¶25}** In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, United States Supreme Court held that under the Confrontation Clause, "testimonial" statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination. Recently, in

*Melendez–Diaz v. Massachusetts* (2009), —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, the United States Supreme Court, applying *Crawford*, concluded it was a violation of a defendant's right to confrontation in a drug trafficking case where a lab analyst's notarized certificates regarding the identity and weight of the substance at issue were admitted without affording the defendant an opportunity to cross-examine the lab analyst. See *State v. Monroe*, Cuyahoga App.No. 94768, 2011-Ohio-3045, ¶ 54.

**{¶26}** The State responds that it had on its witness list an FBI representative who could testify concerning the software program used to assist the Alliance police in the preparation of the tracking of Phillips' cell phone.  As the State aptly suggests, a competent defense attorney, having reviewed the prosecutor's discovery materials, may likely have made a strategic decision not to insist on the presence of a qualified federal agent at trial to possibly buttress the accuracy of a software program used to track movements from a murder suspect's cell phone. See Appellee's Brief at 16. "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States* (5th Cir. 1978), 575 F.2d 515, 521. In the present circumstances, it becomes quite problematic for a reviewing court to consider the rule of *Melendez-Diaz* in the context of a direct claim of ineffective assistance, without straying de hors the record. Speculation by this Court as to the overall effect of an FBI analyst's foundational technical testimony on the jury's ultimate decision-making process would thus be disfavored. Generally, "[s]peculation is insufficient to demonstrate the required prejudice needed to succeed on a claim for ineffective assistance of counsel." *State v. Moon*, Cuyahoga App.No. 93673,

2010-Ohio-4483, ¶ 9, citing *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864 (additional citations omitted).

**{¶27}** Accordingly, upon review, we find no demonstration of ineffective assistance of trial counsel for want of invoking *Crawford* and *Melendez-Diaz* under the circumstances.

**{¶28}** Appellant's First Assignment of Error is overruled.

II.

**{¶29}** In his Second Assignment of Error, appellant argues the trial court erred by allowing the State to introduce a letter he wrote to a third party shortly before Leeson's murder. We disagree.

**{¶30}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App.No. 1999CA00027, unreported, at 2.

**{¶31}** In the case sub judice, the trial court permitted the State to introduce a letter appellant wrote on March 9, 2010 to Mike Stillion, a prison inmate who had been a boyfriend of Tammie Goodwin. The letter states as follows:

**{¶32}** "So once again, I apologize and I'd say I'm sorry but I'd be lying so that I won't say. I have known Tammie since she was nine years old, Mike. I truly love her and I will not let her go and by the time you get out she and I will be married. And I

have informed a person today we are going to get this dissolution done fast. Yes, the yellow bellied maggot is out trying to proclaim his love for her but that's a done deal. I met him face to face and explained to him he's done. Tammie is my girl and mine only. So Mr. Michael David Stillion, I do apologize if your feelings are hurt, but please have faith and believe Tamie does love me and she will not be coming back to you after your release. I just felt you should know and I don't want you getting out and thinking she's going to be with you because she's not. And don't worry about he don't want none of this. I'm one of the baddest motherfuckers with my hands you'll ever know. I'm gone." State's Exhibit 45.

{¶33} The issue before us is whether the letter was admissible under Evid.R. 404.

{¶34} Evid.R. 404(A) provides, with certain exceptions, that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. Said rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶35} Appellant maintains that a review of Tammie Goodwin's testimony reveals that appellant knew about her relationship with Leeson (although appellant was not aware of the sexual aspect of the relationship) and that he was generally "okay" with it. See Tr. at 265-266. Appellant thus challenges the utilization of appellant's letter to

Stillion as a means of proving motive. However, we find the State's theory of the case was two-fold; i.e., the State proposed that appellant killed Leeson both as a means of getting items to sell for crack cocaine and a means of eliminating one of Tammie Goodwin's romantic partners. Upon review, particularly where the trial court gave a limiting instruction that the jury was to consider appellant's letter only for the purpose of determining motive, we find no abuse of discretion in the court's allowance of said letter.

{¶36} Both sides in this appeal also make articulate arguments regarding whether the letter was admissible as evidence of appellant's (declarant's) then existing mental, emotional, or physical condition under Evid.R. 803(3). However, because we find the letter would have been an admissible non-hearsay statement as an admission by a party-opponent under Evid.R. 801(D)(2) (see, e.g., *State v. Hunt*, Franklin App.No. 06AP-1155, 2007-Ohio-3281, ¶ 6; *State v. Dixon*, Richland App.No. No. 2004-CA-90, 2005-Ohio-2846, ¶ 23), we find further consideration of the issue of hearsay exception under Evid.R. 803(3) to be unnecessary.

{¶37} Appellant's Second Assignment of Error is therefore overruled.

III.

{¶38} In his Third Assignment of Error, appellant argues the trial court erred in allowing into evidence certain autopsy and crime scene photographs. We disagree.

{¶39} Under Evidence Rules 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. See also *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Under Evidence Rule 403(A), the probative value of the evidence must be weighed against the danger of unfair prejudice, of confusion of the issues, or of misleading the

jury. Evid.R. 611(A) further provides, in relevant part, the trial court "shall exercise reasonable control over the mode and order of ... presenting evidence so as ... to make the ... presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time." "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." *State v. Woodard* (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568. "The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." *Woodard* at 25, 215 N.E.2d 568.

{¶40} In the case sub judice, the trial court admitted twenty-three photographs out of 176 provided by the coroner, Dr. Murthy. Each of these depicted the different stabbing and blunt force injuries to Leeson, and each was explained by the coroner as his testimony progressed. In addition, a crime scene photograph showing some of the blood around the body was shown to the jury.

{¶41} Under the circumstances in this case, where appellant denied being anywhere near Leeson's home on the night of the murder, it was relevant for the jury to ascertain the nature of the intent of appellant's acts against Leeson, the specifics of Leeson's injuries, and the medical impact of the beating Leeson received from the perpetrator.

{¶42} We therefore are unpersuaded upon review that the trial court abused its discretion in admitting the autopsy and crime scene photographs at issue, and in determining the danger of undue prejudice caused by admission of the photographs did not substantially outweigh their probative value.

**{¶43}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶44}** In his Fourth Assignment of Error, appellant contends his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

**{¶45}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶46}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶47}** Based on the arguments in the briefs, we will focus on the two most serious charges against appellant. He was convicted of aggravated murder, R.C. 2903.01(B), which provides that "[n]o person shall purposely cause the death of another ... while committing or attempting to commit, or while fleeing immediately after

committing or attempting to commit...aggravated robbery and/or aggravated burglary." Appellant was further convicted of aggravated robbery under R. C. 2911.01(A)(3). That statute provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised code, or in fleeing immediately after the attempt or offense, shall ... [i]nflict, or attempt to inflict, serious physical harm on another.

{¶48} The record reveals that Leeson was observed playing pool at the Elks Club until about 10:00 PM on the evening of March 10, 2010. Although at trial the coroner was unable to set forth an estimated time of death for Leeson, police detectives theorized that Leeson was killed between 10:52 PM and 11:52 PM on March 10, 2010. Two of Leeson's neighbors, Kevin Kline and Jennifer Hall, both heard the sound of a house door slamming at about 11PM. Hall also saw Leeson's Chrysler being abruptly driven from the residence that night, although Hall could not see the driver at the time. Cell tower analysis indicated that appellant's cell phone was used at least twice within a 2.8 mile radius of Leeson's residence on the night of March 10, 2010.

{¶49} In addition, drug dealer Waylon Hillman and his girlfriend, Kristen Carli, testified that appellant sold them two TVs, in exchange for crack cocaine, early the next morning, March 11, 2010. Carli later pawned one of the TVs in Alliance. Detectives were able to trace both TVs back to Leeson's house. Carli also witnessed appellant in possession of and later setting fire to the interior of Leeson's Chrysler in Lexington Township on the morning of March 11, 2011.

{¶50} Appellant correctly notes that the State did not produce any forensic or physical evidence linking appellant to the scene of Leeson's murder. No blood or DNA from Leeson was linked to appellant's person or clothing. Likewise, no DNA from

appellant was found on Leeson, including any scrapings from under his fingernails. Although the perpetrator apparently spread bleach and ammonia around the scene and Leeson's body as a means of destroying evidence, no evidence was presented at trial that appellant, when taken into custody, smelled of those chemicals or that he had traces on his person. Finally, no eyewitnesses positively put appellant at or inside Leeson's residence on the night of the killing, although two of appellant's housemates, Rusty Inherst and Billy Jo Orzo, recalled hearing him come home about 4 AM on March 11, 2011.

**{¶51}** Neither the fact of Leeson's death as a homicide nor the lack of physical evidence at the scene is in serious dispute in this appeal. Thus, the "sufficiency" portion of this assignment of error boils down to the nature of the evidence pointing to appellant's identity as the purposeful murderer and robber.

**{¶52}** It is well-established in Ohio that circumstantial evidence has the same probative value as direct evidence. See, e.g., *State v. Pryor,* Stark App.No. 2007CA00166, 2008-Ohio-1249, ¶ 34, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Courts must periodically be on guard against what some researchers have labeled the "CSI effect," a theory which posits that jurors who are familiar with forensic science techniques via television and other media will hold prosecutors to an unreasonably high standard of proof. See, e.g., *Commonwealth v. Seng* (2010), 456 Mass. 490, 503, 924 N.E.2d 285. Furthermore, because defendants may often deny having a purpose to kill, Ohio law recognizes that purpose can be determined from the surrounding facts and circumstances. See *State v. Eley,* 77 Ohio St.3d 174,180, 1996-Ohio-323.

{¶53} The record in this case reveals overwhelming evidence that appellant was in possession of Leeson's Chrysler and two TVs from Leeson's house the morning after Leeson was killed. Appellant was seen "torching" the Chrysler, creating an inference that he was trying to destroy evidence. After this, appellant got in the passenger seat of Carli's car, telling Carli she "might hear some bad things," and not to start talking about something "you don't know about." Tr. at 164, 186. Evidence was also presented of appellant's jealousy over Tammie Goodwin, who periodically stayed with Leeson and maintained a sexual relationship with him. Appellant's jealousy over Goodwin was evinced by a letter dated the day before the killing, in which appellant told another of Goodwin's boyfriends, prison inmate Mike Stillion, that Goodwin was his and Stillion should leave her alone, claiming to be "one of the baddest motherfuckers with my hands you'll ever know." Furthermore, Beth Ann Pryor, a long-time friend of appellant, had spoken to appellant a few weeks before the killing, at which time appellant told her he was aware that Leeson always had "a pocketful of money on Friday nights" and that he was going to "rob the old man." Tr. at 120-121.

{¶54} Upon review of the aforesaid, we find sufficient circumstantial evidence existed for reasonable fact finders to convict on the aggravated murder, aggravated robbery, and remaining charges (aggravated burglary, tampering with evidence, and arson) against appellant. The convictions were supported by the sufficiency of the evidence. We further hold the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered. The convictions were not against the manifest weight of the evidence.

{¶55} Appellant's Fourth Assignment of Error is therefore overruled.

V.

**{¶56}** In his Fifth Assignment of Error, appellant contends the trial court abused its discretion in denying his motion to vacate fines and costs. We disagree.

**{¶57}** In *State v. Threatt,* 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph two of the syllabus, the Supreme Court held that a motion by an indigent criminal defendant to waive payment of costs must be made at the time of sentencing. The court stated that: "[i]f the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed under an abuse-of-discretion standard. Otherwise, the issue is waived and costs are res judicata." *Id.* at ¶ 23, 843 N.E.2d 164.

**{¶58}** Appellant directs us to *State v. Joseph*, 125 Ohio St.3d 76, 926 N.E.2d 278, 2010-Ohio-954, wherein the Ohio Supreme Court held under former R.C. 2947.23 that a trial court errs in imposing court costs without informing a defendant in open court at the sentencing hearing, but that the error does not void the defendant's entire sentence. Instead, upon remand, the trial court must address the defendant's motion for waiver of payment of court costs, should defendant file same. Id.

**{¶59}** The Ohio Supreme Court's concern in *Joseph* was that the defendant was "not given an opportunity at the sentencing hearing to seek a waiver of the payment of costs, because the trial court did not mention costs at the sentencing hearing." Id. at ¶ 13. In the case sub judice, however, appellant made a separate motion to waive costs, which was ultimately denied by the trial court. Thus, the procedural stance of the present case does not raise the concerns of *Joseph* that a defendant's requirement to pay costs should not be placed in a sentencing entry without discussion at the sentencing hearing.

**{¶60}** We therefore find no error or abuse of discretion under the circumstances of this case regarding appellant's payment of court costs.

**{¶61}** Appellant's Fifth Assignment of Error is therefore overruled.

**{¶62}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

_____

_____

_____

JUDGES

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


THE STATE OF OHIO                         :
                                          :
    Plaintiff-Appellee                 :
                                          :
-vs-                                      :               JUDGMENT ENTRY
                                          :
JEFFREY SCOTT PHILLIPS                     :
                                          :
    Defendant-Appellant                :               Case No. 2010 CA 00338


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to appellant.


                                       _____


                                       _____


                                       _____
                                              JUDGES