[Cite as *State v. Keahey*, 2014-Ohio-4971.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No.  E-13-055 |
| Appellee | Trial Court No.  2011-CR-275 |
| v. | |
| Demetreus A. Keahey | **DECISION AND JUDGMENT** |
| Appellant | Decided:  November 7, 2014 |

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Mary Ann Barylski, and Frank Romeo Zeleznikar, Assistant
Prosecuting Attorneys, for appellee.

Demetreus A. Keahey, pro se.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an accelerated appeal from a judgment of the Erie County Court of

Common Pleas in which the trial court denied a petition for post-conviction relief filed by

appellant, Demetrius Keahey.  The relevant facts leading to this appeal are as follows.

{¶ 2} Appellant and Kindra McGill are the parents of a daughter, K.K. Kindra is also the former girlfriend of Prince Hampton, who is the father of her two boys, P.H. and D.H. An incident arose at the home of Kindra and appellant on May 7, 2011, during which Prince pulled a knife and stabbed appellant in the back. Neither Kindra nor appellant named Prince as the person who stabbed appellant, and no one was charged with a crime in that instance.

{¶ 3} On the morning of June 20, 2011, appellant drove to 2015 Aspen Run Road in Sandusky, Ohio, the home of Kindra's mother, Joyce McGill, with the stated intent of picking up K.K. and Kindra so he could take them to the doctor's office for K.K.'s scheduled appointment. Appellant arrived early, parked his vehicle on the street in front of the house, and walked inside. After a brief conversation with Joyce appellant went back outside, where he saw a vehicle, driven by Prince, pulling into the driveway. The car also contained three minor children, P.H, D.H. and A.C.

{¶ 4} When Prince exited the vehicle, appellant drew a gun and fired several shots at Prince. One bullet hit Prince in the arm, and another went through his pants pocket, hitting Prince in the leg and shredding a roll of paper money that was in his pocket. After appellant began firing at him, Prince ran down the street, and appellant got into his car and drove away. Prince collapsed several blocks from McGill's house. Neighbors called 911, medical assistance was dispatched to the scene, and Prince was taken to the hospital.

{¶ 5} Police arrived on the scene, where they discovered that one bullet had gone through the door of Prince's vehicle, and another one had gone through the outside wall

2.

and into the living room of McGill's neighbor, Brunell Hendrickson. Still another bullet was found under Prince's vehicle, and several more were later found on the ground in the surrounding area. In addition, a pair of flip-flop sandals and a closed pocket knife were found on the driveway near Prince's vehicle. On July 25, 2011, an Erie County Grand Jury indicted appellant on one count of drug possession (in an unrelated case), one count of felonious assault and one count of attempted murder on Prince Hampton, three separate counts of felonious assault on P.H, D.H. and A.C., one count of having a weapon while under disability, and one count of improperly discharging a firearm at or into a habitation or school safety zone.

{¶ 6} A jury trial was held on September 4-7 and 10, 2012. Trial testimony was presented on behalf of the state by Joyce and Kindra McGill, Brunell Hendrickson, Jeremy Pruitt, Robert and Evelyn Brown, Eric Jensen, and various members of the Sandusky Police Department. Prince was unavailable to testify at trial.

{¶ 7} Joyce testified that she did not see Prince with a knife or a gun on June 20, 2011, but she did see appellant take out a gun and start shooting. Later, Joyce told police that appellant walked down the driveway to the sidewalk after Prince ran away.

{¶ 8} Kindra testified that she heard it was Prince who stabbed appellant in May 2011, and she stated that Prince and appellant were angry at each other because Prince's then-girlfriend was stirring up trouble. Kindra also testified that appellant was supposed to meet her and her children at the doctor's office on June 20, 2011, however, he came to her mother's home instead. Kindra further stated that she did not witness the shooting

3.

however, after hearing shots fired, she went outside and removed the children from the car. She did not recall seeing a knife or a hole in the car door. Kindra stated that she never saw appellant on June 20. She recalled seeing Prince with a knife and a gun on past occasions, but she denied knowing whether he habitually carries a weapon. On redirect, Kindra testified that she knew appellant was not allowed to have a gun.

{¶ 9} Brunell Hendrickson testified that she was in her kitchen at approximately 8:55 a.m., when she heard six gunshots coming from nearby Aspen Run Road. She immediately called 911 to report the shooting. Brunell stated she then heard screaming, a car accelerating, and two more gunshots, the last of which came through the wall of her house and landed in her living room. Brunell said that she saw "a black man running down across the lots of the houses directly in front of [her]" before she heard the last shots.

{¶ 10} Jeremy Pruitt, Joyce's next door neighbor, testified that he heard three "pops" between 8:30 and 9:30 a.m. on June 20, 2011. As he picked up the phone to call 911, he saw appellant walking down the street "to get into a vehicle." He also stated that another man was running down the street, and that he saw pieces of money on the ground at the end of his own driveway. On cross-examination, Pruitt testified that he did not see a knife. He said he could not see whether the man who was running had a weapon.

{¶ 11} Robert Brown, a resident of South Oldgate Road, testified that on June 20, 2011, a man ran up to his house, bleeding, stating that he had been shot and asking for

4.

assistance. While Brown and a neighbor, William Myers, tried to get the man to lie down, he heard someone yell "nigger, you're dead." Brown said there was a "big bullet hole" in the man's arm, but he did not see a wound in the man's leg. He could not identify appellant as the driver of the car. Evelyn Brown, Robert's wife, testified that she heard shots on June 20, 2011, and saw a man running down the street. She then heard more shots, followed by someone driving past her home at a high rate of speed.

{¶ 12} Eric Jensen, Joyce's neighbor, testified that he saw a "black guy in a white T-shirt" being chased by "another black guy with * * * a hoodie on" who appeared to raise his arm and shoot at the man in the white shirt. Jensen said that, shortly after hearing the shot, he saw a car "take off." On cross-examination, Jensen testified that he did not see Prince holding a knife.

{¶ 13} Members of the Sandusky Police Department who testified at trial were Lieutenants Richard Braun and Danny Lewis, Detectives Ken Nixon and Gary Wichman, Officer Christopher Denny, and Assistant Chief John Orzech. Also testifying were Todd Wharton and Scott Desloover.

{¶ 14} Braun testified that he was dispatched to Aspen Run Road on June 20, 2011. However, before he got to that address, he saw a gunshot victim on the ground on Laurel Lane near South Oldgate, with a wound on his left arm and leg. Braun identified the victim as Prince. Braun said that he found shell casings on the ground around Joyce's home, and saw a bullet hole in the door of a car parked in the driveway. He also

5.

observed sandals and a knife on the ground near the car, a place in the yard where "the dirt was kicked up," and a blood trail leading away from the driveway toward the injured man on Laurel Lane.

{¶ 15} On cross-examination, Braun testified that he spoke to a witness, William Myers, who said he heard Prince and appellant yelling at each other. When the state objected to Braun's statement as hearsay, the defense indicated that Myers, although present, would not be asked to testify because he is a "loose-canon." The trial court limited Braun's testimony to saying that he spoke to Myers, who reported hearing "a number" of shots. On redirect, Braun testified that the knife appeared to be closed in pictures taken at the scene.

{¶ 16} Following Braun's testimony, a conversation occurred between defense counsel, the prosecution and the trial court concerning appellant's claim of self-defense. The trial court warned defense counsel to research the issue thoroughly because, in order to assert self-defense, appellant had to admit shooting Prince and, in addition, appellant must present sufficient evidence to support self-defense to get the instruction. Testimony then resumed.

{¶ 17} Nixon testified that Prince had bullet wounds in his left arm and left thigh. He stated that Prince had $1,265 in his pocket, and that some of the bills were "shredded" by a bullet.

6.

{¶ 18} Denny testified that he interviewed Jensen and Prewitt, who each said they heard three shots and then saw a black male in a hoodie chasing another black male who was wearing a white T-shirt.

{¶ 19} Wichman testified that there was "bad blood" between appellant and Prince, who stabbed appellant in May 2011. Wichman also testified that he interviewed Brunell Hendrickson and then went to Joyce McGill's house, where he saw blood on the back of a nearby car, "confetti" on the driveway, and a closed pocket knife on the driveway. Wichman testified that, in his opinion, appellant had a "retreat zone" that would have allowed him to get into his car without following Prince down the street. Wichman also testified no guns were ever found.

{¶ 20} Lewis briefly testified that he arrested appellant on an unrelated drug offense on October 7, 2001, which resulted in a felony conviction. Wharton, a forensic scientist in the Firearms and Toolmark Section of the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that the weapon which fired at least five rounds at Prince was a semi-automatic, 9mm handgun. He further testified that it is possible all the bullets fired at Prince were from the same gun, however, the four remaining casings were too damaged to be certain. On cross-examination, Wharton testified that it was impossible to identify the shooter from looking at the bullets.

{¶ 21} Orzech testified that he was a Sandusky Police detective on June 20, 2011, when he responded to a call at the home of Brunell Hendricks. He stated that the bullet taken from Brunell's home and a fragment found in Joyce's driveway were both 9mm

7.

Luger caliber, and both were fired from a barrel that had five lands and five grooves and a right-hand twist. Orzech stated that he found a pair of gloves, a pair of sandals and a closed knife in Joyce's driveway. He also stated that a groove in the lawn could have been caused by a cartridge that skipped through the grass. He identified confetti-like pieces of money in the grass as coming from the roll of bills that was in Prince's pocket.

{¶ 22} On cross-examination, Orzech testified that the bullet hole in Prince's vehicle was angled such that the shot would have come from the rear of the vehicle. Orzech disputed the defense's argument that more than one gun could have been used, based on the fact that all the casings could have come from the same firearm. He also testified that police searched the entire neighborhood but did not find a gun. Orzech stated that police could not establish that the knife on Joyce's driveway was involved in the incident.

{¶ 23} At the close of Orzech's testimony, the state rested. Defense counsel made a motion for acquittal pursuant to Crim.R. 29, which was denied. Thereafter, the trial court and appellant engaged in an exchange in which the trial court again warned appellant that he would be required to admit to shooting Prince in order to establish a claim of self-defense. The trial court also told appellant that he had the burden of presenting sufficient evidence to warrant a self-defense instruction.

{¶ 24} Appellant testified on his own behalf at trial. He said that Prince stabbed him in May 2011 after the two men argued about how appellant treated Prince's children. Appellant said that he moved out of the apartment he shared with Kindra after the

8.

stabbing, because he "feared for his life." As to the events of June 20, 2011, appellant testified that he initially said he would meet Kindra and K.K. at the doctor's office. However, he changed his mind and went to Joyce's house because he did not want Kindra driving a car so soon after she had surgery, and because he wanted them to go "as a family." Appellant said that he arrived before 9 a.m. and went inside, however, he left the house when Joyce started to "pick on him" for not taking off his shoes. As he was walking toward his car, Prince drove the vehicle into the driveway "real fast," causing appellant to back up against the house. When Prince hopped out of the car "with a knife," appellant "pulled out the gun" and fired at Prince. Appellant said that when he headed toward his car, he heard a shot. When he turned around, he saw Prince holding a gun. Appellant responded by firing several rounds at Prince as Prince ran away. Appellant said that he got into his car and drove off after Prince ran away.

{¶ 25} Appellant said that, as he drove off, he heard Prince say: "nigga, you dead." Appellant testified that he fled to Erie, Pennsylvania after the shooting, and did not return until three months later when he turned himself into Sandusky Police.

{¶ 26} On cross-examination, appellant testified that he is prohibited from possessing a firearm due to a prior drug conviction. Appellant also stated that he did not name Prince as the person who stabbed him in May 2011 because he was afraid he would be killed in retaliation. Appellant said he did not get into his car and leave when he first saw Prince at Joyce's house because Prince was driving fast, and he was scared. He said

9.

he "got rid of" the gun on his way back to Sandusky from Pennsylvania, because the police in Sandusky considered him "armed and dangerous" and he did not want to be "shot on sight."

{¶ 27} Appellant further testified that he could not run to his car before Prince ran away because he would have been shot in the back. He said he did not stop shooting, even though there were children in the car, because he was trying to protect himself. He admitted bringing a firearm to Joyce's house, even though he is not permitted to carry a weapon. Appellant stated that Prince initiated the altercation by jumping out of the car and coming toward him with a knife. Appellant also stated that it was Prince, not appellant, who said "you're dead nigga." Appellant agreed with the prosecutor's statement that "Prince pulls a knife, you pulled the gun, and you shot."

{¶ 28} At the close of appellant's testimony, the defense rested. The state presented no rebuttal evidence. The trial court and the parties then discussed proposed jury instructions, during which defense counsel renewed his request for an instruction on self-defense. In addition, defense counsel asked for an instruction as to necessity in regard to the charge of having a weapon while under disability. After hearing arguments from the defense and the prosecution, the trial court denied the requests for self-defense and necessity instructions, to which the defense objected. Thereafter, closing arguments were presented by the state and the defense, after which jury instructions were given and the jury retired to deliberate. On September 10, 2012, the jury found appellant guilty of one count of felonious assault and one count of attempted murder of Prince, one count of

10.

having a weapon while under disability, and one count of improperly discharging a firearm at or into a habitation or school safety zone. Not-guilty verdicts were returned as to felonious assault on P.H., D.J. and A.C. The remaining charge of drug possession was later dismissed. On October 4, 2012, the trial court sentenced appellant to serve a total of 23 years in prison.

{¶ 29} Appellant filed a direct appeal in this court on October 29, 2012. However, on December 4, 2012, we dismissed the appeal, after finding that the trial court's judgment did not constitute a final, appealable order. The trial court issued a nunc pro tunc judgment on December 17, 2012. On March 5, 2013, appellant filed a motion for delayed appeal, which this court granted on March 27, 2013. On October 24, 2014, we affirmed the trial court's judgment. *State v. Keahey*, 6th Dist. Erie No. E-13-009, 2014-Ohio-4729.

{¶ 30} In the meantime, on July 5, 2013, appellant filed a petition for post-conviction relief ("PCR"). In his petition, appellant asserted a claim of ineffective assistance of trial counsel due to counsel's alleged failure to (1) properly research the case, interview and subpoena key trial witnesses, (2) raise the issue of a conflict of interest that allegedly existed between appellant and the trial judge, and (3) enlist appellant's aid in preparing a strategy that included appellant's presence at the jury view of the crime scene. Appellant supported his claims with copies of ballistics reports prepared by the Bureau of Criminal Identification and Investigation and several police reports. The state filed a response in opposition and appellant filed a reply. The trial

11.

court denied appellant's PCR petition on September 11, 2013, without holding a hearing. Appellant filed a notice of appeal in this case on September 30, 2013, in which he raises the following assignment of error:

> The trial court committed error when they [sic] abused there [sic] discretion by denying defendant-appellant's post-conviction petition, in violation of the defendant-appellant's due process rights under the 6th and 14th Amend. [sic] to the United States Const. [sic] and Art. 1, Sec. 10, of the Ohio Const. [sic]

{¶ 31} In support of his sole assignment of error, appellant makes two general arguments. First, appellant argues that he was deprived of a fair trial because his appointed counsel failed to adequately prepare for trial. As a result, counsel failed to: (1) effectively cross-examine those witnesses who testified, (2) issue a subpoena to ensure that Prince would appear and testify against him, (3) call William Myers as a witness, even though Myers was present in court on the first day of the trial, (4) test evidence for DNA and secure an expert to testify on his behalf, and (5) attend the jury view to "point out critical facts to the jurors that supported his affirmative defense of self-defense. Second, appellant argues that a conflict of interest exists between himself and the trial judge, which resulted in appellant receiving a prison sentence that exceeded the recommendation of the prosecutor.

12.

## Standards of Review

{¶ 32} It is well-settled in Ohio that a post-conviction relief petition "will be granted only where the denial or infringement of constitutional rights is so substantial as to render the judgment void or voidable." *State v. Shuster*, 5th Dist. Morgan No. 14 AP 0003, 2014-Ohio-4144, ¶ 14, citing *State v. Jackson,* 5th Dist. Delaware Nos. 04CA-A-11-078, 04CA-A-079, 2005-Ohio-5173, ¶ 13. Accordingly, a petition for post-conviction relief may be granted only if the defendant can demonstrate "a violation of constitutional dimension that occurred at the time that the defendant was tried and convicted." *Id.*, citing *State v. Powell*, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1st Dist.1993).

{¶ 33} The trial court's decision to grant or deny a petition for post-conviction relief will not be overturned on appeal absent a finding of abuse of discretion. *State v. Ward*, 6th Dist. Ottawa No. OT-13-001, 2014-Ohio-426, ¶ 17. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, "[i]n the interest of providing finality to judgments of conviction, courts construe the post-conviction relief allowed under [the statute] narrowly." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 47, citing *State v. Steffen*, 70 Ohio St.3d 399, 639 N.E.2d 67 (1994). In addition, in reviewing the trial court's ruling on a post-conviction petition, we will give deference to the trial court's findings of fact. *Id.* With these standards in mind, we will address each of appellant's arguments.

13.

## Ineffectiveness of Trial Counsel

{¶ 34} The general standard of review for evaluating claims of ineffective assistance of counsel was set forth by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus, as follows:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. ( *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80L.Ed.2d 674 (1984), followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

Further, this court has recognized that:

there is 'a strong presumption that counsel's conduct falls within the wide range of professional assistance * * *.' *Bradley*, supra, at 142, 538 N.E.2d 373, quoting *Strickland*, supra, at 689. In this regard, 'the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'

*Strickland*, supra, at 689, quoting *Michael v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). Ohio presumes a licensed attorney is competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965).

*State v. Jackson*, 6th Dist. Erie No. E-01-024, 2002-Ohio-2359, ¶ 35.

{¶ 35} Appellant argues that his defense counsel was ineffective for failing to properly investigate the issue of which witnesses to call at trial. Specifically, appellant claims that counsel should have called Prince and William Myers as defense witnesses.

{¶ 36} "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *State v. Philips*, 5th Dist. Stark No. 2010 CA 00338, 2011-Ohio-6569, ¶ 26, quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978). Generally, trial counsel is entitled to a strong presumption that decisions regarding investigation and the calling of trial witnesses "fall within the wide range of reasonable professional assistance." *Shuster*, 5th Dist. Morgan No. 14 AP 0003, 2014-Ohio-4144, at ¶ 20, citing *State v. Sallie*, 81 Ohio St.3d 573, 675, 693 N.E.2d 267 (1998). The decision of whether or not to call a particular defense witness "falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 980 N.E.2d 263, ¶ 222, quoting *State v. Treesh,* 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).

{¶ 37} The record shows that defense counsel conducted an in-depth cross-examination of each of the witnesses named by appellant with the exception of Prince

15.

and Myers, who did not testify at trial. As to those two individuals, appellant's assertion that Prince would have admitted owning the knife on Joyce's driveway and carrying a gun on June 20, 2011, is self-serving and speculative at best. Defense counsel's decision not to call Myers to testify for the defense was addressed during the trial, when defense counsel told the court he would not be calling Myers to the stand because he is a "loose cannon."

{¶ 38} Upon consideration of the foregoing, we agree with the trial court that defense counsel adequately demonstrated "his knowledge/investigation of the facts of the case" during the course of the trial. Appellant's arguments to the contrary are without merit.

{¶ 39} Appellant further claims that counsel was ineffective because he did not insist on testing the knife for Prince's DNA. Appellant argues that the presence of Prince's DNA on the knife would have bolstered his claim that Prince threatened him with a weapon.

{¶ 40} Testimony was presented at trial that Prince attacked appellant with a knife in May 2011. Although no witness saw Prince holding a knife on June 20, 2011, testimony was presented that Prince owns and has been known to carry a knife. However, even if Prince's DNA were detected on knife through testing, such evidence would do nothing to show that Prince actually threatened appellant with that particular weapon. Accordingly, appellant was not unduly prejudiced by defense counsel's decision not to insist that DNA tests be performed on the knife.

16.

**{¶ 41}** Appellant also claims that defense counsel was ineffective for not presenting expert testimony to show that four of the nine bullets recovered from the crime scene could have been fired by a gun other than his own. Appellant argues that his expert's testimony, along with Myers' testimony, would have supported his claim that Prince fired a gun and he responded by firing at Prince in self-defense.

**{¶ 42}** Appellant's claim of failure to secure expert ballistics testimony was not raised in appellant's petition for post-conviction relief, and the right to assert it in this appeal, has been waived. *See State v. Barb,* 8th Dist. Cuyahoga No. 94054, 2010-Ohio-5239, ¶ 25 (Citations omitted.) Nevertheless, since the ultimate question is whether appellant was prejudiced by counsel's alleged ineffectiveness, we will analyze the issue further.

**{¶ 43}** It is well-settled that "'[t]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel.'" *State v. Jones*, 9th Dist. Summit No. 26226, 2012–Ohio–2744, ¶ 18, quoting *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). In this case, the record shows that defense counsel cross-examined the state's witnesses on the issue of whether four of the nine recovered bullets could have been fired from a second gun. Appellant's claim that an expert would have been able to definitively state that bullets were recovered from two different guns is purely speculative. Accordingly, upon consideration, we cannot say that appellant was unduly prejudiced by defense counsel's failure to obtain expert ballistics testimony in this case.

17.

**{¶ 44}** As to appellant's claim that counsel was ineffective for failing to attend the jury view to "point out critical facts to the jury" to support appellant's contention that he did not have a means of safely retreating, which is a critical element of the affirmative defense of self-defense. We disagree, for the following reasons.

**{¶ 45}** R.C. 2945.16 states:

When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body, under the charge of the sheriff or other officer, to such place, which shall be shown to them by a person designated by the court. While the jurors are absent on such view no person other than such officer and such person so appointed, shall speak to them on any subject connected with the trial. The accused has the right to attend such view by the jury, but may waive this right.

**{¶ 46}** The record shows that, after reviewing the prosecution's plans for the jury view, defense counsel submitted written "points of interest" of his own for the jury to consider, including the location of Prince's vehicle on Joyce's driveway, and placement of the knife and sandals in relation to the vehicle. Counsel said he did not plan on attending because he submitted issues for the jury's consideration and he had viewed the "area numerous times" in the past. Defense counsel further stated that, after discussing the issue with appellant, appellant did not "really feel the need" to attend the jury view.

18.

**{¶ 47}** "[I]t is well-settled law in Ohio that a petitioner may not raise issues in a petition for post-conviction relief which could have been raised on direct appeal." *State .v Harrison*, 8th Dist. No. 79434, 2002 WL 450130, *2 (Mar. 14, 2002). Issues that can be raised on appeal include claims that a defendant received ineffective assistance of counsel due to his absence during the jury view. See *State v. Stivender*, 2d Dist. Montgomery No. 19094, 2002-Ohio-6864. Accordingly, this issue is barred by the doctrine of res judicata. *Harrison*, *supra.*

**{¶ 48}** However, even if appellant's claim is not barred, post-conviction relief is available only for errors that are based on evidence that is outside the trial court's record. *State v. Turner*, 8th Dist. Cuyahoga No. 91695, 2008-Ohio-6648, ¶ 8. Appellant has failed to present any evidence to to show that he has suffered prejudice by his and counsel's absence from the jury view, other than to opine that defense counsel could have educated the jury as to his "retreat theory" if he attended the jury view. *Stivender*, supra, at ¶ 11. Accordingly appellant has not demonstrated that his trial counsel was ineffective for not attending, or insisting that appellant attend the jury view.

### Conflict of Interest

**{¶ 49}** In his second argument, appellant claims that his defense counsel was ineffective for not attempting to disqualify the trial court judge. Specifically, appellant alleges that he received a 23-year sentence in this case, which was in excess of the state's recommendation, because the trial judge is biased against him. In support, appellant

19.

argues that the trial judge, who was formerly an assistant prosecutor assigned to the Erie Count Drug Task Force, helped to secure appellant's prior drug conviction.

{¶ 50} It is well-settled that the issue of bias on the part of a judge should be raised at the earliest opportunity or the issue is waived. *State v. Scharsch,* 2d Dist. Champaign No. 2013-CA-38, 2014-ohio-1756, ¶ 9, citing *In re Disqualification of Pepple*, 47 Ohio St.3d 606, 607, 546 N.E.2d 1298 (1989). The record in this case does not show that appellant filed a motion to disqualify the trial judge prior to or during the trial. In addition, appellant did not raise this issue in his direct appeal. Also, in the judgment entry on appeal in this case, the trial judge states that, while he was a prosecutor for the Erie County Drug Task Force at the time of appellant's drug conviction, he does not remember appellant from that case, and he has both prosecuted and adjudicated thousands of cases since that time.

{¶ 51} A review of the record does not show bias on the part of the trial judge, and appellant does not offer any evidence from outside the record to demonstrate such bias. As to the length of appellant's sentence, the trial court is free to impose any lawful sentence, even if it is longer than that recommended by the prosecutor. *State v. Toney*, 7th Dist. Mahoning No. 10 MA 20, 2011-Ohio-2464, ¶ 9. Accordingly, appellant has not established that his appointed trial counsel was ineffective for not filing a request to disqualify the trial judge.

{¶ 52} On consideration of the foregoing, we find that appellant has failed to establish that he received ineffective assistance of appointed counsel, or that his

20.

constitutional rights were otherwise substantially impaired so as to render his conviction void or voidable. Accordingly, we find that the trial court did not abuse its discretion by denying appellant's petition for post-conviction relief, and appellant's sole assignment of error is not well-taken.

{¶ 53} The judgment of the Erie County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                    JUDGE
Thomas J. Osowik, J.

James D. Jensen, J.                 _____
CONCUR.                                         JUDGE

                                                  _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.